## UNITED STATES v. ONE BLUE TAFFETA EVENING COAT, TRIMMED LACE, AND OTHER WOMEN'S CLOTHING.

(District Court, S. D. New York.   December 1, 1916.)

No. 60-219.

1. CUSTOMS DUTIES ☞133—COLLECTION—LIBEL FOR FORFEITURE—INCONSISTENT COUNTS.

It is permissible to plead contradictory versions of the same transaction in different counts of a libel for the forfeiture of goods for the nonpayment of customs duties thereon, and therefore a count charging that the goods were part of claimant's baggage is not bad, because other counts charged that part of the goods belonged to others.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 316–331; Dec. Dig. ☞133.]

2. PLEADING ☞8(2)—LIBEL FOR FORFEITURE—LEGAL CONCLUSION—"MENTIONED."

In a count of a libel for forfeiture of goods, which charged that the goods were part of the baggage of the claimant and were not "mentioned" to the collector before whom the entry of the articles was made, contrary to Rev. St. § 2802 (Comp. St. 1913, § 5499), the word "mentioned" does not involve a legal conclusion, since the term is not used as a legal term, but embraces any form of mentioning included in its broader colloquial meaning.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 13; Dec. Dig. ☞8(2).

For other definitions, see Words and Phrases, First and Second Series, Mention.]

3. CUSTOMS DUTIES ☞133—LIBEL FOR FORFEITURE—EXCEPTION—LIBEL GOOD IN PART.

An exception cannot be sustained to a libel for the forfeiture of goods for nonpayment of customs duties, which is insufficient as to part of the goods described therein, but good as to the rest.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 316–331; Dec. Dig. ☞133.]

4. CUSTOMS DUTIES ☞133—LIBEL FOR FORFEITURE—SMUGGLING.

A libel for forfeiture of goods, which charged that the claimant smuggled and clandestinely introduced the merchandise into the United States with intent to defraud the revenue and without paying and accounting for the duty thereon, contrary to Rev. St. § 2865 (Comp. St. 1913, § 5548), is sufficient.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 316–331; Dec. Dig. ☞133.]

5. CUSTOMS DUTIES ☞133—LIBEL FOR FORFEITURE—"IMPORTATION."

A count in a libel for the forfeiture of goods, which charged that they were imported without the production of a duly certified invoice, and without an affidavit excusing failure to produce the invoice and a sworn statement of the costs, contrary to Tariff Act Oct. 3, 1913, c. 16, § III, E, 38 Stat. 182 (Comp. St. 1913, § 5522), is fatally defective, since the importation is complete as soon as the goods enter the port, at which time there could be no evasion of the duty, so that there can be no illegal importation, except of goods illegally packed or absolutely forbidden.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 316–331; Dec. Dig. ☞133.

For other definitions, see Words and Phrases, First and Second Series, Importation.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. CUSTOMS DUTIES ☞121—STATUTE—CONSTRUCTION—ILLEGAL IMPORTATION.
    Rev. St. § 3082 (Comp. St. 1913, § 5785), forbidding the importation of goods contrary to law, applies only to the importation of goods illegally packed or absolutely forbidden, and is not redundant or a reduplication of the smuggling section of Customs Administrative Act June 10, 1890, c. 407, 26 Stat. 131, as amended by Act Oct. 3, 1913, c. 16, § 3, 38 Stat. 181.

    [Ed. Note.—For other cases, see Customs Duties, Cent. Dig. § 261; Dec. Dig. ☞121.]

7. CUSTOMS DUTIES ☞133—LIBEL FOR FORFEITURE—DUTIES OF EXAMINER.
    A libel for forfeiture of goods, which charges that false oral statements were made to the examiner, but which does not properly plead article 1124 of the Customs Regulations, making it the duty of the examiner to ascertain and report the foreign market value of such merchandise as the collector designates for examination, nor allege that the collector had designated the merchandise in question for examination, does not show that the examiner had any powers with reference to the merchandise, and is therefore insufficient.

    [Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 316–331; Dec. Dig. ☞133.]

8. CUSTOMS DUTIES ☞130—FORFEITURE OF GOODS—FALSE STATEMENTS.
    Only the goods about which false statements are made are forfeited, unless they are boxed or baled with others, and a libel for the forfeiture of all the goods for false statements concerning some matters should allege that they were all packed together.

    [Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 296–315; Dec. Dig. ☞130.]

9. CUSTOMS DUTIES ☞130—FORFEITURE OF GOODS—COMMERCIAL GOODS DISGUISED AS BAGGAGE.
    Goods which, disguised as personal baggage, are attempted to be introduced into the commerce of the country by means of a false baggage declaration, are subject to forfeiture.

    [Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 296–315; Dec. Dig. ☞130.]

Libel by the United States to forfeit One Blue Taffeta Evening Coat, Trimmed Lace, and Other Women's Clothing. On exceptions by the claimants for insufficiency of the libel. Exceptions sustained in part, and overruled in part.

This is a libel of information to forfeit certain clothing brought into the port of New York on December 10, 1915, from the republic of France, by the claimant, Charlotte A. Warren, and seized by the collector. The clothing is divided into six groups, marked respectively, "A," "B," "C," "D," "E," and "F," and is charged to be subject to forfeiture by virtue of five counts, which are as follows:

First Count. That said articles, to wit, said wearing apparel, hereinbefore designated as groups C, D, E, and F, imported and brought into the United States from a foreign country as aforesaid, were subject to duty by law, and were found as part of the baggage of said Charlotte A. Warren upon her arrival within the United States as a passenger on the steamship Espagne, on or about the 15th day of November, 1915, and were not, at the time of making entry of such baggage, mentioned to the collector or any other officer of the customs before whom entry of such articles was made, by the person making such entry, to wit, Charlotte A. Warren, contrary to the provisions of section 2802 of the Revised Statutes of the United States [Comp. St. 1913, § 5499].

Second Count. That the said Charlotte A. Warren, acting for and on behalf of one Evelyn Byrd Burden, and being the importer aforesaid of the merchan-

dise herein before designated as groups B, E, and F, on or about the 15th day of November, 1915, falsely and knowingly did import and bring into the United States the said merchandise designated as groups B, E, and F, contrary to law, in that—

(a) Said merchandise which should have been invoiced was, by said Charlotte A. Warren, smuggled and clandestinely introduced into the United States with intent to defraud the revenue of the United States and without paying and accounting for the duty thereon, contrary to the provisions of section 2865 of the Revised Statutes of the United States [Comp. St. 1913, § 5548].

(b) Said merchandise was not personal effects accompanying a passenger, and exceeded $100 in value, and was imported by said Charlotte A. Warren without the production of a duly certified invoice thereof, as required by law, and without the production of an affidavit showing why it was impracticable to produce such invoice, and without a sworn statement in the form of an invoice showing the actual cost of said merchandise, or the actual market value or wholesale price thereof at the time of exportation to the United States in the principal markets of the country from which same was imported, contrary to the provisions of § III, subdivision E, of the Tariff Act of October 3, 1913.

Third Count. That the said Charlotte A. Warren, being the importer aforesaid of the said merchandise designated as groups A, B, C, D, E, and F, on or about the 15th day of November, 1915, did enter and introduce the said merchandise imported as aforesaid from said foreign country into the commerce of the United States at the port and Southern district of New York, by means of a certain false and fraudulent written statement and declaration, to wit, a certain baggage declaration and entry, in which, on or about the 15th day of November, 1915, the said Charlotte A. Warren did declare before a certain inspector of customs at the port and collection district of New York, falsely and fraudulently, among other things, that all the articles, either used or unused, in her baggage, or on her person, or on the persons of those accompanying her which had been obtained abroad, together with the cost price of each item purchased, and the actual market value, if obtained by gift, or other than by purchase, were fully set forth and described in said baggage declaration and entry, and that all of said articles were intended for the personal use of herself or of those accompanying her, except as indicated in said baggage declaration and entry; whereas, in truth and in fact, the merchandise aforesaid was not fully stated and declared by her, the said Charlotte A. Warren, and the said baggage declaration and entry was false and fraudulent, in that it did not contain a statement of all the said merchandise, together with the cost price of each item thereof, or make reference to all of said merchandise, as the said Charlotte A. Warren then and there well knew; that the said Charlotte A. Warren, was, on the 15th day of November, 1915, guilty of certain willful acts and omissions whereby the United States was deprived of a part of the duties legally due and accruing on said merchandise hereinbefore described as groups A, B, C, D, E, and F, to wit, in knowingly and willfully neglecting to set forth in said baggage declaration and entry all the said merchandise purchased or acquired by her abroad. All with intent to defraud the revenue of the United States and contrary to the provisions of section III, par. H, of the Tariff Act of October 3, 1913 [Comp. St. 1913, § 5526].

Fourth Count. That the said Charlotte A. Warren, being the importer of the said merchandise designated as groups A, B, C, D, E, and F, on or about the 15th day of November, 1915, did enter and introduce, and attempt to enter and introduce, the merchandise aforesaid, imported as aforesaid, from said foreign country into the commerce of the United States, at the port and Southern district of New York, by means of certain false verbal statements made to one Charles T. Riotte, who then and there was an examiner of merchandise at the port of New York, in and by which said false verbal statements the said Charlotte A. Warren stated that of the articles hereinbefore referred to, one black and metal thread evening costume, trimmed with lace, one flame-colored evening gown, beaded, and one flame-colored evening costume, had theretofore been purchased in France and imported into the

United States, and that theretofore duty had been paid upon said gowns; whereas, in truth and in fact, as said Charlotte A. Warren then and there well knew, the said three gowns had never been imported into the United States prior to the 15th day of November, 1915, and no duty had ever theretofore been paid thereon. All with intent to defraud the revenue of the United States, and contrary to the provisions of section III, par. H, of the Tariff Act of October 3, 1913.

Fifth Count. That the said Charlotte A. Warren, being the importer aforesaid of the said merchandise designated as groups A, B, C, D, E, and F, on or about the 15th day of November, 1915, did attempt to introduce into the commerce of the United States the merchandise aforesaid, which was then and there subject to duty by law, by means of a certain false and fraudulent declaration and written statement by her then made, to wit, a certain baggage declaration and entry, in which, on or about the date aforesaid, the said Charlotte A. Warren did declare before a certain inspector of customs at the port and collection district of New York, falsely and fraudulently, among other things, that the foreign cost or actual foreign market value of the said merchandise was the sum of $1,500; whereas, in truth and in fact, the actual cost price or the actual foreign market value of the said merchandise, as the said Charlotte A. Warren then and there well new, was largely in excess of the sum of $1,500. All with intent to defraud the revenue of the United States, and contrary to the provisions of section III, par. H, of the Tariff Act of October 3, 1913.

After seizure, Charlotte A. Warren intervened as claimant to groups A, C, and D, Evelyn Byrd Burden intervened as claimant to groups B and F, and certain articles in group E, and Gwendolyn Dows intervened as claimant to certain articles in group E. All the claimants have filed exceptions for insufficiency to all counts of the libel.

Frank E. Carstarphen and John E. Walker, both of New York City, for the United States.

William L. Wemple, of New York City, for claimant Warren.

Alfred A. Wheat, of New York City, for claimants Burden and Dows.

LEARNED HAND, District Judge (after stating the facts as above). [1] *First Count.* If groups C, D, E, and F were a part of the claimant Warren's baggage, and were subject to duty, and were not mentioned to the collector when entered, they were, of course, forfeit. The first criticism is that in other counts it appears that groups E and F were imported for the claimants Burden and Dows. If groups E and F could not be at once in fact personal baggage and goods imported for the use of another (One Pearl Chain v. U. S., 123 Fed. 371, 374, 59 C. C. A. 499), still it is permissible to plead contradictory versions of the same transaction in the alternative, so as to be safe, whichever way the proof develops (Bishop, Crim. Proc. §§ 453 [2], 492). The count, standing alone, is good.

[2] A second criticism is that the word "mentioned" involves a legal conclusion, and is bad for that reason. I think not. It may be true, since One Pearl Chain v. U. S., 123 Fed. 371, 59 C. C. A. 499, that it is enough generally to state upon a baggage declaration that one has wearing apparel, without the particularity of R. S. § 2799;[1] but that does not make the word "mention," as used in section 2802, a legal term. Rather it embraces within the term any form of "mentioning" to the collector, including its broader colloquial meaning.

[1] Comp. St. 1913, § 5496.

Words like "subject to duty" are good, even in indictments.    Dunbar v. U. S., 156 U. S. 185, 15 Sup. Ct. 325, 39 L. Ed. 390.

[3] Finally, even if the groups E and F were to be excluded from the count, it would still be good as to C and D, and an exception, like a demurrer, is bad, if any part of the pleading be good.    The exception to the first count is overruled.

[4] *Second Count.* (a) The smuggling count is challenged because in other counts the United States has alleged that the goods were disclosed to the authorities, but the objection amounts to no more than a charge of inconsistency between counts.    The terms of the charge are valid.    Keck v. U. S., 172 U. S. 434, 19 Sup. Ct. 254, 43 L. Ed. 505.    And since that case they have become the accepted form.

[5, 6] (b) R. S. § 3082 (Comp. St. 1913, § 5785), only forbids importation, and section III, E, affects only entry, and the claimants argue that entry succeeds, and is not a part of, importation.    "Importation" is complete, certainly for purposes of the incidence of duties, as soon as the goods enter the port.    Arnold v. United States, 9 Cranch, 104, 3 L. Ed. 671;    The Boston, Fed. Cas. No. 1,670;    United States v. Lindsey, Fed. Cas. No. 15,603, 1 Gall. 365.    In United States v. Thomas, Fed. Cas. No. 16,473, 4 Ben. 370, Judge Hall applied this definition so far as to hold bad an indictment under section 3082, which charged that the goods were imported without payment of the legal duties.    His theory was that, since the importation was complete when the goods reached the port, and no duties could be evaded till entry, there could be no illegal importation, except the goods were illegally packed or absolutely forbidden.    The case was followed by Judge Deady in United States v. Kee Ho (D. C.) 33 Fed. 333, and by Judge Benedict in United States v. Claflin, Fed. Cas. No. 14,798, 13 Blatchf. 178, 186, but it was criticized by Judge Longyear, obiter, in United States v. Merriam, Fed. Cas. No. 15,759.    As there have been three decisions upon the point, I scarcely think I ought to disregard them as mere matter of authority.

Besides, I do not see how the word "import" can mean different things in the same connection.    If the importation of goods illegally packed or absolutely forbidden is complete when they enter the precincts of the port, it must be complete when they enter under a scheme to defraud the revenues.    Section 3082 is not redundant, and does not reduplicate the smuggling section, or the elaborate provisions of the Customs Administrative Act.    It is directed against introducing goods into the precincts of the port.    The exception is overruled to count 2 (a), and is sustained to count 2 (b).

*Third Count.* The third count is said to be bad, because it does not appear that the goods were entered and introduced into the commerce of the United States.    This the claimants urge follows from the character of the goods, women's clothes, and from the fact that they were imported either for the claimant Warren herself, or for her friends, the claimant Burden, or the claimant Dows.    Nothing of the sort appears in the count itself, which only alleges that the claimant Warren imported the goods into the commerce of the United States.    Each count may stand alone, as I have said, and nothing contradicts the allegation that they were so imported.

Another question is whether the allegation is good in law. The phrase "enter. and introduce" is no more contaminated by legal implications than the allegations in the indictments in Dunbar v. United States, supra, and Keck'v. United States, supra. As to "enter," I think it may stand, because it signifies the complete series of acts necessary to get a permit to pass the goods (United States v. Cargo of Sugar, Fed. Cas. No. 14,722, 3 Sawyer, 46), and they are defined by the statute, which is accessible to all. While it is true that this single legal term includes a number of acts, that is not necessarily a fatal defect. The word "introduce" comprehends fewer acts than "enter" (United States v. 25 Packages of Hats, 231 U. S. 358, 34 Sup. Ct. 63, 58 L. Ed. 267), and it is at least uncertain just how far an importer must go to "introduce" goods into the United States. We know from the case cited that to unload and place them in general order is enough, but to make them arrive merely at the port is only an attempt to introduce. While it may be unsafe, therefore, for the United States to go to trial upon that word, without further specification, the exception will not lie, because "entry" is enough, and has been alleged. As the greater, it includes "introduction," which is the less. How the United States would fare if it failed to prove complete entry, but did prove acts, sufficient for introduction, without specifying those acts in the libel, is another question.

The exception is overruled, as well as the exception on the same ground to counts 4 and 5.

[7] *Fourth Count.* The specific objection to this count is that false verbal (sic) statements made to an examiner were irrelevant. The goods are not alleged to be passengers' baggage, but imported merchandise, and I will not look beyond the count. A false statement to the examiner was relevant, if examiners had any authority in respect of admitting imported merchandise. Article 1124 of the Customs Regulations makes it the duty of examiners to ascertain and report the foreign market value of such imported merchandise as the collector designates for examination, and to describe it, so that the collector might determine the duty upon it. But the regulation is not pleaded as it should be, nor is it alleged that the collector had designated the merchandise for examination. As the count stands, the examiner had no duties and no powers, and the exception is sustained.

[8] A further point is raised that only the clothes about which the false oral statements were made are forfeit. This is so, unless it were alleged that they were baled or boxed with others; if the United States means to forfeit the other articles, it must allege that they were packed with those about which the false statements were made, since that is a part of the necessary allegations to forfeit those articles. However, part of the count is good without such an allegation, since the articles mentioned could in any case be forfeited, and an exception will not lie while any part of the count is good.

[9] *Fifth Count.* This count raises the point, which is in fact also raised by the third count, though not argued, whether in entering and introducing into the commerce of the United States certain mer-

chandise, not passengers' personal baggage, the goods are forfeit, if the importer uses a false baggage declaration. Certainly to attempt to introduce goods into the commerce of the United States by such a false paper is not safer than by a false invoice. The count does not present the question whether to introduce personal baggage as such by a false baggage declaration violates section III, H, of the Customs Administration Act (Comp. St. 1913, § 5526). The count would be satisfied, if the claimant, seeking to introduce goods for sale, disguised as personal baggage, used a false baggage declaration. In this regard it is precisely like count 3, which is not challenged on that score. It may turn out at the trial that personal baggage was introduced by a false baggage declaration, and then that point will be raised; but this pleading does not raise it, and the pleader is entitled to be taken at his word. Or it might turn out that some of the goods designed for import into the commerce of the United States were packed with personal baggage and entered by a false invoice. That would raise the question of the contamination of the personal baggage, and of whether it was sufficiently pleaded; but that, also, is not raised by this pleading. The exception is therefore overruled.

A decree may therefore pass sustaining the exception to count 2 (b) and to count 4, and overruling the other exceptions. The libelant has leave to plead over generally, except as to count 2 (b), which, if I am right, is incurable.

